IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN FRISCIA and DAVID BOBZIEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>  v.<br><br>FLAGSTAR BANK, FSB and DOES 1–10,<br><br>Defendants.<br>_____/ | No. C 12-05178 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

### INTRODUCTION

In this putative class action, defendant mortgage company allegedly evaluated plaintiffs' home-loan application using discriminatory income-verification requirements. Defendant moves to dismiss. After full consideration of the parties' briefs and a hearing, the motion is **GRANTED**.

### STATEMENT

The following facts are accepted as true for the purposes of this order. In June 2012, plaintiffs Steven Friscia and David Bobzien jointly applied to defendant Flagstar Bank, FSB, for a loan on a home they wished to purchase in Rancho Mirage. Plaintiffs were obligated to close concurrently on a contract for the sale of their old home in San Francisco. Plaintiffs attempted to use their disability income in support of their loan application, which required plaintiffs to provide "written documentation of monthly [disability] income and verify continuance for at least three years" (Compl. ¶ 18). Plaintiffs were "shocked and outraged" at this onerous,

disability-based requirement (*id.* ¶ 19). Presumably due to their inability or unwillingness to satisfy the onerous documentation requirement, plaintiffs' application was delayed and they were forced to pay cash for their new home in order to close on both houses as contractually obligated (*id.* ¶ 22).

The action commenced last October and we are now up to a second amended complaint, which alleges Flagstar's income-verification policy violated provisions of the federal Fair Housing Act and California's Unruh Civil Rights Act. Plaintiffs zero in on the following language taken from Flagstar's loan application, which required plaintiffs to "provide written documentation of monthly income and verify continuance for at least three years" *only* for disability income (Compl. ¶ 18). Plaintiffs allege thousands of handicapped individuals were subjected to Flagstar's discriminatory income-verification policy, and will seek to certify a nationwide cla§ for their FHA claims and a California subclass for their Unruh Act claims.

Flagstar Bank now moves to dismiss under Rule 12(b)(6). Flagstar asserts the above loan-application language, seemingly requiring three years' income documentation for disabled applicants, was taken out of context from an automated printout of plaintiffs' loan application. This type of printout, Flagstar claims, resulted from the software that Flagstar uses to evaluate conventional mortgages for Federal National Mortgage Association ("Fannie Mae") compliance. Because this statement resulted from Fannie Mae-licensed software, according to Flagstar, it cannot reflect a Flagstar policy. Flagstar also asserts that the above sentence, which plaintiffs claim establishes the existence of Flagstar's discriminatory policy, was taken out of context. Flagstar claims the sentence following it in the application printout reads: "When the lender believes or knows that the Social Security or disability income falls in a category that does not have a defined expiration date, the lender may conclude that the income is considered stable, predictable, and likely to continue and therefore the lender is not expected to request additional information from the borrower." Beyond that, Flagstar argues that Fannie Mae's underwriting guidelines require it to verify the continuance of borrowers' income three years into the potential mortgage in order to evaluate borrowers' creditworthiness. Flagstar says the full and fair context of the statement shows that the three-year future income documentation was only required when

the lender knew or believed that the disability income was of a type that had a defined expiration date. If the disability income was of a type that did *not* typically have a defined expiration date, such as long-term Social Security or long-term private disability insurance, then three years' future income was presumed, and a simple copy of the award letter would suffice to satisfy Fannie Mae and Flagstar guidelines.

**ANALYSIS**

**1.   STANDARD UNDER RULE 12(b)(6)**

On a motion to dismiss, a court evaluates a complaint for:

> sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

**2.   FHA DISCRIMINATION**

Section 3605(a) makes it unlawful for anyone "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." Section 3604(f)(2) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ." Plaintiff alleges that Flagstar violated these sections by "imposing unnecessary and unduly burdensome disability income documentation requirements upon borrowers with a handicap" (Compl. ¶¶ 41–42).

Section 3604(c) makes it unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such

3

1  preference, limitation, or discrimination." Plaintiff alleges that Flagstar's income-verification
2  policy was such a notice or statement (Compl. ¶ 43).

3  Our court of appeals applies the Title VII discrimination analysis in examining FHA
4  discrimination claims; thus, plaintiffs can establish FHA discrimination claims under a theory
5  of disparate treatment or disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir.
6  1997). In order to survive a motion to dismiss, plaintiffs must allege that they qualify as an
7  "aggrieved person" subjected to "an alleged discriminatory housing practice" because of their
8  handicap. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997). "[T]he vitality of
9  a fair housing complaint should be judged by the statutory elements of an FHA claim rather than
10  the structure of the prima facie case." *Ibid.*

11  While our court of appeals has not published a decision during the *Iqbal*/*Twombly* era
12  regarding the lenient *Gilligan* pleading standard, unpublished opinions support the view that the
13  standard still applies. For example, *Haynes v. R.W. Selby & Co., Inc.*, 338 F.App'x 694, 696
14  (9th Cir. 2009), reversed dismissal for failure to state a claim when the spare allegations only
15  stated that "defendants discriminated against Haynes by increasing his rent after learning he was
16  African American and Muslim, and that he suffered injuries." *See also Johnson v. Winn Props.*,
17  446 F.App'x 939, 940 (9th Cir. 2011) (citing *Gilligan* with approval); *Anderson v. MCM Const.*
18  *Inc.*, 2012 WL 6571034 (E.D. Cal. Dec. 17, 2012) (Magistrate Judge Gregory Hollows)
19  (collecting cases on discrimination pleading standard). Moreover, in the employment
20  discrimination context, our court of appeals has recently suggested that in most cases, it will
21  not be any more difficult for a plaintiff today to state a discrimination claim than it was prior to
22  *Iqbal* and *Twombly*. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012).

23  Flagstar appears to argue that, despite *Gilligan*, plaintiffs must plead facts to support all
24  the elements of a prima facie housing discrimination case in order to survive a motion to dismiss.
25  Not so. As *Gilligan* only requires plaintiffs to plead the statutory elements of an FHA claim,
26  they must only allege the following.

27  *First*, plaintiffs must allege they are "aggrieved persons" as defined under the FHA.
28  An aggrieved person is any person who "(1) claims to have been injured by a discriminatory

4

housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. 3602(i). Plaintiffs allege they are aggrieved parties in that they claim to have been injured by Flagstar's burdensome, discriminatory policy of requiring them to submit onerously obtained proof of income to the detriment of their home purchase.

*Second*, plaintiffs must allege a discriminatory housing practice linked to the plaintiffs' handicap. Plaintiffs here have alleged the existence of a discriminatory housing practice; they allege that Flagstar has a policy of requiring "unnecessary and unduly burdensome disability income verification requirements," versus presumably less onerous requirements for other types of income (Compl. ¶¶ 41–42). Plaintiffs sparingly allege facts indicating that Flagstar has a "policy" of discrimination whose existence is indicated by the sentence, vaguely attributed to plaintiffs' loan application, requiring *only* borrowers claiming disability income to "provide written documentation of monthly income and verify continuance for at least three years." Plaintiffs are likewise stingy in stating how exactly this supposed policy delayed their loan application, thereby harming them, or whether their loan application was otherwise acceptable.

The major problem with this complaint arises with the terms "disability" and "handicap," as used in the FHA and other contexts. The word "disability" has so many meanings in various contexts that it is impossible to learn from the complaint what the nature of plaintiffs' disabilities are. It is resultantly impossible to know whether plaintiffs are "handicapped" within the meaning of the FHA. This difference may become important at the Rule 23 stage of this putative class action but for now, it is important to determine whether plaintiffs have even stated a claim.

Plaintiffs are too coy with the facts. For example, from the complaint it is impossible to learn not only the nature of plaintiffs' disabilities, but also the type of disability income they attempted to use for income-verification purposes (*i.e.*, long-term versus short-term) and what entity provided this income (*i.e.*, Social Security versus private insurance). Plaintiffs fail to show why it was so onerous to provide their proof of disability income or how exactly the supposed discriminatory policy delayed their application. They decline to share facts that would show whether other factors may have delayed their loan application or whether other borrowers

5

who were similarly situated to them, but not receiving disability income, applied for loans without documentation delays. This order finds it is impossible to tell whether plaintiffs have a legitimate FHA claim. Flagstar's motion to dismiss must be **GRANTED**.

### 3. UNRUH ACT VIOLATION

"The Unruh Civil Rights Act, guarantees to all persons within the jurisdiction of California, no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition, the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." *Koebke v. Bernardo Heights Country Club*, 116 Cal. App. 4th 791, 807 (2004). "Section 51 has always provided substantive protection against invidious discrimination in public accommodations, without specifying remedies, and section 52 has always provided remedies, including a private action for damages, for violations of section 51." *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 667 (2009). Plaintiffs seeking damages under these sections of the Unruh Act must plead and prove intentional discrimination, subject to exceptions not relevant here. *Id.* at 634. To state a claim for intentional discrimination, a plaintiff must allege "willful, affirmative misconduct." Conduct which constitutes no more than a disparate impact of a facially neutral policy on a particular group will not suffice. *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 853–54 (2005).

Here, plaintiffs allege "Flagstar's income verification policy discriminated or made a distinction that denied full and equal privileges to [p]laintiffs," and "[t]he motivating reason for Flagstar's conduct was its knowledge or perception of [p]laintiffs' disability" (Compl. ¶¶ 44–45). The same problems that arose under the FHA analysis — plaintiffs' refusal to specify their types of disabilities and disability income — apply here. It is simply impossible to tell whether plaintiffs meet the Unruh Act definition of "disability." In addition, plaintiffs' sole attempt to plead discriminatory intent reads: "The motivating reason for Flagstar's conduct was its knowledge or perception of [p]laintiffs' disability." That statement is no more than a conclusory allegation of a required element. Overall, plaintiffs' attempt to plead an Unruh Act violation is entirely inadequate and consequently, Flagstar's motion to dismiss must be **GRANTED**.

6

**CONCLUSION**

Plaintiffs' glib pleadings fail to apprise the reader of the bases for their claims and as a result, Flagstar's motion to dismiss plaintiff's second amended complaint is **GRANTED**. Plaintiffs may file a motion seeking leave to file an amended complaint by **MARCH 28, 2013** (*see* Dkt. No. 23). A proposed amended complaint and a redline of changes must be appended to the motion, which should clearly explain how the proposed amendment addresses the deficiencies identified herein. Counsel are on notice of the arguments already of record. They must plead their best case.

**IT IS SO ORDERED.**

Dated:  March 21, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE